FILED'08 JUL 02 16:29USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRYSTAL BUCK-BARNES,
    Plaintiff,

                      CV 07-808-PK

v.                       FINDINGS AND
                       RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

PAPAK, Magistrate Judge:

       Plaintiff Crystal Buck-Barnes filed this action June 1, 2007, seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). This court has jurisdiction over Buck-Barnes' action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

       The sole issue in this appeal is whether the Administrative Law Judge erred at step one of

Page 1 - FINDINGS AND RECOMMENDATION

the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits in finding that Buck-Barnes had engaged in substantial gainful activity and, thus, was not disabled. For the reasons set forth below, the ALJ's decision should be reversed, and the case remanded for further proceedings.

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## BACKGROUND

Plaintiff Buck-Barnes was born February 16, 1971. Tr. 66.[1] On January 30, 2004, she filed applications for Title II disability insurance benefits, Tr. 66-69, and for Title XVI Social Security insurance benefits, Tr. 475-478, with a previous "protective" filing date of October 28, 2003, Tr. 474. In each of her benefits applications, Buck-Barnes alleged a disability onset date of January 1, 1993. Tr. 66, 475. Buck-Barnes' allegedly disabling condition is a cognitive disorder, described in her benefits applications and elsewhere as a "learning difficulty," Tr. 84, 109, but also variously described by her treating and examining physicians and by her counsel as schizoaffective disorder, Tr. 252, 457, 464, cognitive disorder not otherwise specified, Tr. 198, 215, 239, 257, 457, psychotic disorder not otherwise specified, Tr. 184, 186, 198, 327, obsessive-compulsive disorder, Tr. 342, generalized anxiety disorder, Tr. 330, 342, persecutory delusional disorder, Tr. 342, and/or adjustment disorder, Tr. 198, 342. In addition, Buck-Barnes has at various times been diagnosed with depression and with amphetamine addiction in remission. Tr. 84, 109, 184, 186, 198, , 239, 457. She has been assessed as having a Full Scale IQ at the low end of the normal range, measured at the 14th percentile of intellectual functioning. Tr. 237-238.

Buck-Barnes' benefits applications were denied both initially and on reconsideration. Tr. 35-40, 30-34, 480-484, 486-488. On April 17, 2006, an appeal hearing was held before an ALJ. At that hearing, Buck-Barnes acknowledged that she had been employed at levels that would preclude a finding of disability prior to July 2002, and, later, continuously from July 12, 2004, to the date of the hearing. Tr. 500-503. She therefore orally amended her applications to request a

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 9.

closed period of disability from July 1, 2002, to July 12, 2004. *See* Tr. 502-503.

The ALJ heard testimony from Buck-Barnes, her father, her husband, a medical expert, and a vocational expert. In addition, the ALJ considered evidence demonstrating that Buck-Barnes had been employed during her alleged closed period of disability. Specifically, the ALJ considered evidence that Buck-Barnes had been employed as a bin picker in a mill for 30 hours per week at a rate of $8 per hour between an unspecified date in August 2002 and an unspecified date in September 2002, earning a total of $799, Tr. 62, 116, 120, as a resort housekeeper for 20 hours per week at a rate of $7.50 per hour between April 1, 2003, and August 15, 2003, earning a total of $3,685.53, Tr. 63, 103, 116, 119, as a grader in a mill for 40-50 hours per week at a rate of $8.50 per hour between August 1, 2003 and September 25, 2003, earning a total of $3,312.22, Tr. 63, 102, 116, 118, 494, as a life skills facilitator in an adolescent treatment facility for 16 hours per week at a rate of $8.25 per hour between November 5, 2003 and January 16, 2004, earning a total of $1,542 in 2003 and $785.63 in 2004, Tr. 63, 102, 116, 117, and as a dancer between an unspecified date in February 2004 and an unspecified date in June 2004, earning an unspecified amount and working an unspecified number of hours, Tr. 178.

On June 30, 2006, the ALJ issued a decision finding that Buck-Barnes had not been disabled for any continuous period of 12 months during her alleged closed period of disability. Tr. 13-22. Buck-Barnes timely requested administrative review of the ALJ's decision, and the Appeals Council declined her request. Tr. 7-9. In consequence, the ALJ's decision became the agency's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

Here, the ALJ found that Buck-Barnes' work efforts between July 2002, and March 2003, and between January 23, 2004, and July 12, 2004, either did not constitute substantial gainful activity or were unsuccessful work attempts. Tr. 18-19, 19-20. However, the ALJ additionally found that Buck-Barnes had engaged in SGA from an unspecified date in April 2003 through January 23, 2004, Tr. 19, during which period she had worked between three and six months as a resort housekeeper, for less than three months as a mill grader, for less than three months as a life skills facilitator, and from January 1 to January 23, 2004, at an unspecified job from which she

earned a total of $751.88. Tr. 19. In consequence, the ALJ determined that there had been no 12 month period during which Buck-Barnes had not engaged in SGA, Tr.19, 20-21, mandating a finding of not disabled during the alleged closed period of disability, Tr. 21.

The ALJ opined that, because Buck-Barnes was found not disabled at step one of the process, it was unnecessary to address evidence of her medical conditions. Tr. 21. Nevertheless, the ALJ found that the testimony of the medical expert and vocational expert supported his finding that Buck-Barnes was capable of engaging in SGA during her alleged closed period of disability. Tr. 21. The ALJ's opinion did not expressly address the opinions of Buck-Barnes' treating and examining physicians, or the lay evidence offered by her father and husband.[2] However, the ALJ did note that Buck-Barnes married on April 3, 2004, and that her husband is employed, likely rendering her ineligible for SSI from at least that date forward. Tr. 22.

## ANALYSIS

Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or are intended to be done, for pay or profit. *See* 20 C.F.R. §§ 404.1510, 404.1572, 416.910, 416.972. The Commissioner has established that at least six factors are applicable in determining whether a claimant's work activity is both substantial and gainful: the nature of the claimant's work, how well the claimant performs the work, whether the claimant's work is done under special conditions, whether the claimant is self-

---

[2] Had the ALJ's conclusion that there was no period of 12 months or more during Buck-Barnes' alleged closed period of disability been supported by substantial evidence in the record and free of legal error, it would have been proper for the ALJ to omit to consider such evidence. However, because this court has recommended that the Commissioner's decision be reversed and remanded for further proceedings, it is anticipated that the ALJ will consider all such evidence as appropriate at subsequent steps of the five-step process.

Page 6 - FINDINGS AND RECOMMENDATION

employed, the time the claimant spends in work, and the claimant's earnings from the work performed. *See* 20 C.F.R. §§ 404.1573, 404.1574, 416.973, 416.974. Of these, the primary criterion is, as a matter of Social Security Administration policy, claimant earnings. *See* S.S.R. 83-33, 1983 SSR LEXIS 34, *4 ("In evaluating an employee's work activity for SGA purposes, the primary consideration is 'earnings' derived from such services").

The amount of a claimant's earnings can give rise to a rebuttable presumption that a claimant has or has not been engaged in SGA. *See* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). As to the alleged closed period of disability at issue here, claimant earnings create a presumption that a claimant engaged in SGA if they averaged more than $780 per month in 2002, $800 per month in 2003, or $810 per month for 2004. *See* 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii). However, such presumption of SGA is rebuttable based on analysis of the nature of the work, the claimant's performance, the conditions under which the work is performed, and the amount of time the claimant is able to spend at work. *See* 20 C.F.R. §§ 404.1573, 416.973. Indeed, some courts have found that such presumption *cannot* be deemed supported by substantial evidence in the record where an ALJ fails to analyze the nature and quality of the claimant's work, the number of jobs held by the claimant, and the reasons for the termination of the claimant's employment relationships. *See, e.g., Chernicoff v. Richardson*, 400 F. Supp. 448, 454 (W.D.N.Y. 1975).

By contrast, when a claimant's average monthly earnings are less than the applicable SGA earnings level, the Commissioner will presume that the work activity did not constitute SGA, and will not consider other information in addition to claimant earnings in the absence of evidence indicating that the claimant is otherwise engaging in SGA or is affirmatively controlling and

Page 7 - FINDINGS AND RECOMMENDATION

limiting the amount of wages he or she is receiving. *See* 20 C.F.R. §§ 404.1574(b)(3)(i), 404.1574(b)(3)(ii), 416.974(b)(3)(i), 416.974(b)(3)(ii).

If a claimant's work is continuous without significant change in work patterns or earnings, the claimant's monthly earnings over the entire period of work at issue are averaged for purposes of determining whether the work constituted SGA. *See* 20 C.F.R. §§ 404.1574a(a), 416.974a(a). Notwithstanding the foregoing, claimant earnings are averaged separately for each separate SGA earning level period, in this case 2002, 2003, and 2004. *See* 20 C.F.R. §§ 404.1574a(b), 416.974a(b). Where a claimant experiences a significant change in work pattern or earnings, monthly earnings will be averaged for each discrete period of work separately. *See* 20 C.F.R. §§ 404.1574a(c), 404.1574a(d), 416.974a(c), 416.974a(d).

Work performed by a claimant will be considered an unsuccessful work attempt ("UWA") and will not constitute SGA under circumstances set forth in 20 C.F.R. §§ 404.1574(c) and 416.974(c) as follows:

> (1) *General.* Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after working for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) of this section, and you meet the conditions described in paragraphs (c)(2), (3), (4), and (5), of this section. We will use the provisions of this paragraph when we make an initial determination on your application for disability benefits and throughout any appeal you may request. Except as set forth in §404.1592a(a), we will also apply the provisions of this paragraph if you are already entitled to disability benefits, when you work and we consider whether the work you are doing is substantial gainful activity or demonstrates the ability to do substantial gainful activity.
>
> (2) *Event that must precede an unsuccessful work attempt.* There must be a significant break in the continuity of your work before we will consider that you began a work attempt that later proved unsuccessful. You must have stopped working or reduced your work and earnings below the substantial gainful activity earnings level because of your impairment or because of the removal of special

Page 8 - FINDINGS AND RECOMMENDATION

conditions that were essential to the further performance of your work. . . . We will consider your prior work to be "discontinued" for a significant period if you were out of work at least 30 consecutive days. We will also consider your prior work to be "discontinued" if, because of your impairment, you were forced to change to another type of work or another employer.

(3) *If you worked 3 months or less.* We will consider work of 3 months or less to be an unsuccessful work attempt if you stopped working, or you reduced your work and earnings below the substantial gainful activity earnings level, because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work.

(4) *If you worked between 3 and 6 months.* We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work and—

    (i) You were frequently absent from work because of your impairment;

    (ii) Your work was unsatisfactory because of your impairment;

    (iii) You worked during a period of temporary remission of your impairment; or

    (iv) You worked under special conditions that were essential to your performance and these conditions were removed.

(5) *If you worked more than 6 months.* We will not consider work you performed at the substantial gainful activity earnings level for more than 6 months to be an unsuccessful work attempt regardless of why it ended or was reduced below the substantial gainful activity earnings level.

20 C.F.R. §§ 404.1574(c), 416.974(c).

Here, the ALJ appropriately analyzed Buck-Barnes' earnings in 2002, 2003, and 2004 separately, comparing earnings in each of those years to the appropriate SGA earnings level. As to 2002, the ALJ found that Buck-Barnes:

> reported that she worked 30 hours per week at $8 per hour as a millworker from [an unspecified date in] August 2002 to [an unspecified date in] September 2002. . . . Although this approximates earnings of $1,000 per month, because the exact

Page 9 - FINDINGS AND RECOMMENDATION

> beginning and ending dates are unknown, it is assumed that this period of employment either did not constitute substantial gainful activity, and/or was an unsuccessful work attempt. Accordingly, the claimant did not perform substantial gainful activity from July 12, 2002, to December 31, 2002.

Tr. 20. The ALJ's finding that Buck-Barnes' earnings in 2002 were presumptively not SGA is supported by substantial evidence in the record. The record establishes that in August and September 2002, Buck-Barnes earned a total of $799 from her job as a millworker, Tr. 62, 116, 120, or a monthly average for that period of $399.50, less than the SGA earnings level of $780.

As to 2003, the ALJ averaged Buck-Barnes' earnings from three different job positions that she held at various times from April 1, 2003, through the end of the year, and found that her average monthly earnings over that nine month period were $948 per month, exceeding the SGA earnings level of $800. Tr. 20. On the basis of these average monthly earnings, the ALJ found that Buck-Barnes had engaged in SGA from April to December 2003. *See id.*

The ALJ's finding that Buck-Barnes engaged in SGA for nine months in 2003 is premised on the application of an improper legal standard. Under clear Social Security Administration regulations, where a claimant experiences a significant change in work pattern or earnings, monthly earnings will be averaged for each discrete period of work separately. *See* 20 C.F.R. §§ 404.1574a(c), 404.1574a(d), 416.974a(c), 416.974a(d).[3] It was therefore improper for the ALJ to

---

[3] Sections 404.1574a(c) and 416.974a(c) provide that "If there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity." 20 C.F.R. §§ 404.1574a(c), 416.974a(c). Sections 404.1574a(d) and 416.974a(d) provide illustrations of what is "mean[t] by a significant change in the work pattern of an employee." 20 C.F.R. §§ 404.1574a(d), 416.974a(d). In one of those illustrations, a claimant working as a part-time private secretary in an accounting firm received a promotion, such that she began working as a part-time private secretary for a vice president of the firm. The promotion entailed an increase in the claimant's compensation, but no noted change in job duties or working hours. *See id.* The illustration expressly states that such a change constituted a

Page 10 - FINDINGS AND RECOMMENDATION

average Buck-Barnes' earnings from her position as a resort housekeeper from April 1, 2003, to August 15, 2003, at which she worked 20 hours a week, with those from her position as a millworker from August 1, 2003, through September 25, 2003, at which she worked 40-50 hours per week, or with her position as a life skills facilitator from November 5, 2003, through December 31, 2003, at which she worked 16 hours per week. Each time Buck-Barnes left one employment position or took up another she experienced a significant change in both work pattern and earnings, and thus each distinct period of work must necessarily be averaged and analyzed separately.

As to her employment as a resort housekeeper, Buck-Barnes argues that the ALJ erred in failing to find that the job constituted an unsuccessful work attempt. Specifically, Buck-Barnes appears to argue that her employment as a resort housekeeper (20 hours per week) taken together with her employment as a millworker (40-50 hours per week) constitute a single UWA. This argument is incorrect both legally and factually.

First, as noted above, the period from April through the end of July 2003, when Buck-Barnes was employed part-time as a resort housekeeper cannot properly be considered a part of the same work attempt as the period from August to September 2003, when she was employed at or exceeding full-time as a millworker. Moreover, analyzing the period of employment as a resort housekeeper separately, it is clear that this employment was not UWA under the provisions of 20 C.F.R. §§ 404.1574(c)(4) and 416.974(c)(4). The evidence does not clearly show that Buck-Barnes was frequently absent from work because of her impairment, that her work was

---

significant change in work activity and earnings, and that earnings before the change would not be averaged with earnings following the change. *See id.*

Page 11 - FINDINGS AND RECOMMENDATION

unsatisfactory because of her impairment, or that she worked either under special conditions or during a period of remission. To the contrary, the evidence shows that Buck-Barnes voluntarily quit that job position in favor of the full-time work available to her as a millworker. Tr. 103. The ALJ did not err when he declined to treat the period of employment as a resort housekeeper as UWA.

Nevertheless, the ALJ erred in concluding that Buck-Barnes' employment as a resort housekeeper presumptively constituted SGA. From April through the end of July 2003, Buck-Barnes earned $7.50 per hour working 20 hours per week as a resort housekeeper, significantly less than the applicable SGA earnings level of $800 per month. During the entire period from April 1, 2003, through August 15, 2003, she earned $3,685.53 from that employment, or $737.11 per month. The period from April 1, 2003, through July 31, 2003 – before she began working as a millworker in addition to continuing her housekeeper employment for an additional 15 days – is therefore presumptively not SGA under clear Administration regulations. *See* 20 C.F.R. §§ 404.1574(b)(3)(i), 404.1574(b)(3)(ii), 416.974(b)(3)(i), 416.974(b)(3)(ii).

As to the period from August 1, 2003, through September 25, 2003, when Buck-Barnes was employed as a millworker, Buck-Barnes argues that this constituted a part of an unsuccessful work attempt. This argument fails because it was not preceded by at least 30 days of an unemployment, nor was her prior work discontinued because of her impairment. *See* 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2).

As a millworker, Buck-Barnes earned $8.50 per hour and worked 40-50 hours per week, exceeding the applicable SGA earnings level of $800. More specifically, she earned $3,312.22 from this employment in August and September 2002, or $1,656.11 per month. Because this

Page 12 - FINDINGS AND RECOMMENDATION

employment was not UWA, the ALJ did not err in concluding that it presumptively constituted SGA. However, the ALJ failed to consider the nature of the work, the quality of Buck-Barnes' performance of her job duties, and the reason her employment was terminated before finding that the presumption of SGA was warranted. *See* 20 C.F.R. §§ 404.1573, 416.973; *see also Richardson*, 400 F. Supp. at 454. The evidence in the record suggests that due to her alleged impairments Buck-Barnes may not have been qualified for the employment position she held at the mill for less than two months before being terminated for poor performance, *see* Tr. 102, and therefore the ALJ's finding that the period of employment as a millworker was in fact SGA is not supported by substantial evidence.

As to her employment as a life skills facilitator in 2003, Buck-Barnes again argues that it constituted UWA. This employment followed a period of more than 30 days' unemployment, *see* 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2), but did not end due to Buck-Barnes' impairments or because of the removal of special conditions that permitted her to work despite her impairments, *see* 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3). To the contrary, Buck-Barnes simply walked off the job, ostensibly for a cigarette break, and failed to return. Tr. 93. The ALJ therefore did not err when he failed to treat this period of employment as UWA.

Nevertheless, the ALJ erred when he found this period of employment to be presumptively SGA. Buck-Barnes worked as a life skills facilitator for $8.25 per hour for sixteen hours per week, less than the applicable SGA earnings level of $800. More specifically, she earned $1,542 from this employment between November 5, 2003, and December 31, 2003, or $771 per month. Under clear Administration regulations, this period of employment was therefore not SGA.

Page 13 - FINDINGS AND RECOMMENDATION

> As to the period of her employment as a life skills facilitator in 2004, the ALJ found that:
>
> > The claimant's employment as a part time life skills facilitator continued into 2004 until January 16, 2004; her posted earnings from that employer were $785.63. ... Additionally, her pay stub from Easy Pay shows she earned $751.88 during the pay period from January 1 to January 23, 2004 (Exhibit 1D). Accordingly, her earnings through January 23, 2004, were a total of $1,437.51, which exceeds the presumptive level for substantial gainful activity for the period through January 23, 2004. Accordingly, the claimant performed substantial gainful activity from January 1, 2004, to January 23, 2004.

Tr. 20. However, there is no support in the record for the finding that Buck-Barnes earned $751.88 from unspecified employment in January 2004. The cited exhibit, located at Tr. 56-65, not only does not reflect that Buck-Barnes ever received any such payment, it does not provide precise dates such as those set forth in the ALJ's finding as to *any* of Buck-Barnes' work experiences. Moreover, the record contains no other, alternative support for the finding that Buck-Barnes earned $751.88 from any employment in January 2004, or any other time.

Because there is no support in the record for the ALJ's finding, and because Buck-Barnes' 2004 earnings as a life skills facilitator fell below the applicable SGA earnings level of $810, the ALJ erred in concluding that Buck-Barnes engaged in SGA in January 2004.

Finally, the ALJ accepted Buck-Barnes' reports that her earnings as a dancer from February to June 2004 fell below SGA levels. Tr. 20. Because this finding is supported by substantial evidence in the record and is not legally erroneous, the ALJ did not err in finding that Buck-Barnes did not engage in SGA in the period from February 1, 2004, through June 12, 2004, the last day of her alleged closed period of disability.

On the basis of his findings that Buck-Barnes engaged in SGA continuously from April 1, 2003, through January 23, 2004, the ALJ concluded that there was no continuous 12-month period during Buck-Barnes' alleged closed period of disability during which she did not engage

Page 14 - FINDINGS AND RECOMMENDATION

in SGA. Indeed, for this conclusion to hold true, the ALJ need only have found that Buck-Barnes engaged in SGA both before July 1 and after July 12, 2003. However, as set forth above, the ALJ erred in finding that Buck-Barnes engaged in SGA during the entire period from April 1 to July 31, 2003, including the critical period from July 1 to July 12, because her average monthly earnings as a resort housekeeper during that period were below the applicable SGA earnings level of $800. In addition, the ALJ erred in finding that she engaged in SGA during the period of August 1 through September 25, 2003, because of the lack of support in the record for the conclusion that her brief stint of employment as a millworker established her capacity for SGA, during the period of November 5 through December 31, 2003, because her average monthly earnings as a life skills facilitator during that period were below the applicable SGA earnings level of $800, and during the period of January 1 through January 23, 2004, because her earnings as a life skills facilitator during that period were below the applicable SGA earnings level of $810. The ALJ therefore erred in his analysis at step one of the five-step sequential process.

## CONCLUSION

For the reasons set forth above, I recommend that the Commissioner's final decision be reversed and remanded for further proceedings consistent with the discussion above. At step one of the five-step process, the Commissioner must determine whether Buck-Barnes engaged in SGA at such times between July 1, 2002, and July 12, 2002, as to support the conclusion that there was no period of 12 months or longer during her alleged closed period of disability in which she did not engage in SGA, despite the earnings-based presumption that she did not do so from the beginning of the closed period through the end of July 2003 and from October 2003 through the end of the closed period. In the event the Commissioner determines that Buck-

Barnes did not engage in SGA during any period of 12 months or longer during the closed period, the evaluation must proceed through the remainder of the five-step process. A final judgment should be entered pursuant to sentence four of 42 U.S.C. § 405(g).

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 18, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 3rd day of July, 2008.

Honorable Paul Papak
United States Magistrate Judge

Page 16 - FINDINGS AND RECOMMENDATION